IVO LABAR (203492)
BRADY R. DEWAR (252776)
**KERR & WAGSTAFFE LLP**
101Mission Street, 18th Floor
San Francisco, CA 94105–1727
Telephone: (415) 371-8500
Fax: (415) 371-0500
Email: labar@kerrwagstaffe.com
Email: dewar@kerrwagstaffe.com

Attorneys for Plaintiff
LOGITECH INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOGITECH INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>o9 SOLUTIONS, INC., a Texas Corporation,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>1.  BREACH OF CONTRACT<br>2.  RESTITUTION<br>3.  DECLARATORY RELIEF<br><br>**JURY TRIAL DEMANDED** |

COMPLAINT

Plaintiff Logitech Inc. ("Logitech" or "Plaintiff") hereby alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has original federal subject matter jurisdiction under 28 U.S.C. § 1332 in that it is a civil action between citizens of different states in which the amount in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars ($75,000).

2. Plaintiff Logitech Inc. is a California corporation with its principal place of business at 7700 Gateway Boulevard, Newark, California, 94560, in Alameda County.

3. Defendant o9 Solutions, Inc. ("o9" or "Defendant") is a Texas corporation with its principal place of business at 11494 Luna Road, Suite 222, Dallas, Texas, 75234.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District, where Logitech's business is located.

**INTRADISTRICT ASSIGNMENT**

5. Pursuant to Civil Local Rule 3-2(c) and (d), this action should be assigned to the San Francisco or Oakland Division because a substantial part of the events or omissions which give rise to the claims occurred in Alameda County.

**GENERAL ALLEGATIONS**

6. During a period prior to August 29, 2014, Logitech and o9 communicated regarding the possibility of o9 providing Logitech software and services to meet certain business needs of Logitech, including needs related to product portfolio planning, sales planning, operations and supply chain planning, and market intelligence.

7. These communications culminated in Logitech and o9 entering into a Master Subscription Agreement ("MSA"), which Logitech signed on August 29, 2014. A copy of the MSA is attached as <u>Exhibit A</u>.

8. Both Logitech and o9 understood that the purpose of the MSA was for o9 to provide software and services that met Logitech's needs.

9. Under Schedule A of the MSA, o9 agreed to provide Logitech with certain enumerated "Purchased Services," which included making certain software available to

1
COMPLAINT

Logitech.

10. Schedule A of the MSA provided o9 would make available the "Purchased Services" for three years, and that Logitech would pay two hundred and fifty thousand dollars ($250,000) per year for the "Purchased Services."

11. Shortly after entering the MSA, Logitech determined that the software and services that o9 was making available to Logitech did not conform to the description of the "Purchased Services" in Schedule A of the MSA, and that the software and services did not meet Logitech's business needs, frustrating the purpose of the MSA.

12. Logitech communicated these problems to o9 in an attempt to find a solution, but o9 still did not provide software and services as required by Schedule A of the MSA that met Logitech's business needs.

13. On or about September 11, 2014, o9 sent Logitech an invoice for two hundred and fifty thousand dollars ($250,000) for the first year subscription to the "Purchased Services."

14. Based on the material breach by o9 of the MSA in failing to provide the "Purchased Services" as required under the MSA, Logitech determined that the MSA had been terminated, and that no payment under the MSA was due.

15. Logitech never received anything of value under the MSA, and indeed spent time and resources attempting to work with o9 to find a solution that would result in Logitech obtaining the software and services it had contracted for and meeting its business needs, which was the entire purpose of the MSA.

16. Logitech is informed and believes that o9 has not expended and will not expend any funds providing any software or services to Logitech under the MSA.

17. Nonetheless, in or around December 2014 and again in or around January 2015, o9 demanded payment of two hundred and fifty thousand dollars ($250,000) for a year's subscription to software and services that did not satisfy o9's obligations under the MSA, did not meet Logitech's business needs, and were never used by Logitech.

18. Due to a clerical error, Logitech mistakenly paid o9 two hundred and fifty thousand dollars ($250,000) on or about May 8, 2015.

19. On or about July 16, 2015, o9 demanded payment of two hundred and fifty thousand dollars ($250,000) by August 29, 2015, for the second year subscription to software and services that do not satisfy o9's obligations under the MSA, do not meet Logitech's business needs, and have never and will never be used by Logitech.

20. On July 27, 2015, counsel for Logitech sent o9 a letter stating that the MSA had been terminated and requesting a refund of the two hundred and fifty thousand dollars ($250,000) mistakenly paid by Logitech.

21. On or about July 30, 2015, counsel for o9 sent Logitech a letter accusing Logitech of breaching the MSA by "failing to timely pay the first annual subscription payment of $250,000, demanding a refund of its first annual subscription payment of $250,000, failing to pay the second and third annual subscription fee payments of $250,000 each, and attempting to wrongfully terminate the MSA in violation of the MSA's terms."

**FIRST CLAIM**
**(BREACH OF CONTRACT)**
**(Against o9)**

22. Logitech incorporates by reference paragraphs 1 to 21 above, as though fully set forth herein.

23. Logitech and o9 entered the MSA, a valid contract, on or about August 29, 2014.

24. o9 materially breached the MSA, including by failing to provide the software and services required under Schedule A of the MSA. At the time of o9's breach, Logitech had performed all of its then-owing obligations under the MSA.

25. As a result of o9's material breach, all further performance by Logitech under the MSA was excused.

26. As a result of o9's material breach, Logitech has suffered damages.

**SECOND CLAIM**
**(RESTITUTION)**
**(Against o9)**

27. Logitech incorporates by reference paragraphs 1 to 26 above, as though fully set forth herein.

28. The MSA between Logitech and o9 was terminated when o9 materially breached

3
COMPLAINT

1  it by failing to provide the software and services o9 was contractually required to provide.

2      29.  Additionally, the purpose of the MSA was frustrated when o9 made clear that it
3  would not provide software and service that would meet Logitech's business needs.

4      30.  o9 would be unjustly enriched if it were allowed to retain the two hundred and
5  fifty thousand dollars ($250,000) that Logitech mistakenly paid it on or about May 8, 2015,
6  including because Logitech had no obligation to pay o9 under the MSA and because o9 provided
7  nothing of value to Logitech.

**THIRD CLAIM**
**(DECLARATORY RELIEF)**
**(Against o9)**

      31.  Logitech incorporates by reference paragraphs 1 to 30 above, as though fully set forth herein.

      32.  o9 has accused Logitech of breaching the MSA, and Logitech denies any breach, resulting in an existing actual controversy between o9 and Logitech regarding the construction of the MSA and Logitech's rights and obligations thereunder.

      33.  o9 materially breached the MSA and frustrated its purpose by failing to provide software and services it was required to under the MSA and which met Logitech's business needs, excusing Logitech from any obligations under the MSA.

      34.  Further, Section 10.2 of the MSA provides: "IN NO EVENT WILL EITHER PARTY HAVE ANY LIABILITY TO THE OTHER PARTY FOR ANY LOST PROFITS OR REVENUES OR FOR ANY INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, COVER OR PUNITIVE DAMAGES HOWEVER CAUSED, WHETHER IN CONTRACT, TORT OR UNDER ANY OTHER THEORY OF LIABILITY, AND WHETHER OR NOT THE PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES."

      35.  Logitech seeks from this Court a declaration that: (1) Logitech has not breached any of its obligations under the MSA; (2) the MSA bars any claim by Defendant for future fees under the MSA because such fees constitute lost revenue under Section 10.2 of the MSA.

**PRAYER FOR RELIEF**

      WHEREFORE, Plaintiff prays for relief as follows:

4
COMPLAINT

1. General damages in an amount yet to be determined;

2. Restitution in the amount of two hundred and fifty thousand dollars ($250,000);

3. A declaration that Plaintiff has not breached any of its obligations under the Master Subscription Agreement it entered with Defendant on or about August 29, 2014;

4. A declaration that the Master Subscription Agreement Plaintiff entered with Defendant on or about August 29, 2014 bars any claim by Defendant for future fees under the agreement;

5. Costs of suit; and

6. For such other and further relief as the Court deems proper.

Date: August 7, 2015                    **KERR & WAGSTAFFE LLP**

By: _____/s/_____
    IVO LABAR

Attorneys for Plaintiff
LOGITECH INC.



**DEMAND FOR JURY TRIAL**

Pursuant to Civil Local Rule 3-6, Plaintiff hereby demands a trial by jury in this matter.

Date:  August 7, 2015             **KERR & WAGSTAFFE LLP**

By:  _____/s/_____
     IVO LABAR

Attorneys for Plaintiff
LOGITECH INC.